IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANDRE LEE HILLIARD (M47043),<br><br>Plaintiff,<br><br>v.<br><br>CARLOS MARISCAL, *et al.*,<br><br>Defendants. | Case No. 23-cv-00562<br><br>Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiff Andre Lee Hilliard brings this action against Defendants CTOS Mariscal, CTOS Crews, CTO Coates, CTO Freeman, CTOS Hines, CTOS Walker, Oladimeji Kassim, N.P., QMHP Leadinghouse, the Illinois Department of Corrections (IDOC), and Latoya Hughes, Director of the Illinois Department of Corrections. Plaintiff alleges that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment. Plaintiff additionally alleges that Defendant Hughes discriminated against him based on his disability in violation of Title II of the Americans with Disabilities Act ("ADA") and of Section 504 of the Rehabilitation Act ("RA"). Defendant Hughes moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss Counts V and VI, the alleged violations of the ADA and the RA. [94]. For the reasons stated herein, Defendant's Motion to Dismiss is denied.

1

I. **Background**

The following factual allegations taken from the operative third amended complaint ("TAC") (Dkt. 78) are accepted as true for the purposes of the motion to dismiss. *See Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021).

Plaintiff Andre Lee Hilliard is incarcerated in the custody of IDOC and was placed in the Joliet Treatment Center ("JTC") beginning in December 2021 through all events relevant here. [78] ¶¶ 4, 17. Plaintiff has been diagnosed with multiple psychiatric conditions, including PTSD, depression, and bipolar disorder. *Id.* ¶ 16.

On August 12, 2022, Plaintiff informed the JTC staff that he was having a mental health crisis and was suicidal. *Id.* ¶ 18. Plaintiff requested a crisis intervention and was brought to the prison crisis wing, where he first was left handcuffed in the wing's shower room and later moved to a cell in the crisis wing. *Id.* ¶¶ 19, 22. Plaintiff claims that he was approached by Defendant CTOS Mariscal, who allegedly told Plaintiff, "You're always running to crisis and not facing your consequences," called Hilliard a slur, and told Hilliard to kill himself with a TV remote Mariscal left in Plaintiff's cell in the crisis wing *Id.* ¶¶ 20–21, 23.

On August 15, 2022, Defendant QMHP Leadinghouse conducted a crisis assessment. *Id.* ¶ 29. Plaintiff states that he was not provided mental health services after he was moved to the crisis wing and before the assessment. *Id.* ¶ 28. During the assessment, Plaintiff attempted to commit suicide by swallowing the batteries of the TV remote along with a piece of the cord and an earbud from a set of headphones left in his cell, and by cutting open his left arm with pieces of the TV remote he broke off.

2

*Id.* ¶ 30. Plaintiff pleads he attempted suicide because of the lack of mental health care to address his mental health crisis. *Id.*

Plaintiff was removed from his cell to be medically assessed but no "additional treatment" was provided. ¶ 31. The same day, Plaintiff was seen by Defendant Oladimeji Kassim, N.P. *Id.* ¶ 32. Plaintiff informed Defendants Leadinghouse and Kassim that he was still suicidal. *Id.* ¶ 34. Aside from the medical assessment, Plaintiff alleges he was not provided additional mental health services to address his crisis, was not moved to a hospital for treatment, and was placed on a ten-minute watch instead of constant watch. *Id.* ¶¶ 31–35. These checks were not performed in a timely manner. *Id.* ¶ 40. From at least approximately 10:30 am to 12:30 pm, Plaintiff was unmonitored. *Id.* ¶¶ 38, 40.

Around 10:30 am on August 15, 2022, after Plaintiff was returned to his crisis wing cell, he "began cutting and poking himself" with a piece of the broken TV remote that was left in his cell. ¶ 38. At approximately 12:30 or 12:45 pm, Defendant CTO Coates observed blood under Plaintiff's door and called for Defendant CTOS Crews. *Id.* ¶41. Coates and Crews took Plaintiff in handcuffs to the prison's nurse and Hilliard's wounds were bandaged. *Id.* ¶¶ 42–43. Plaintiff alleges was not provided a mental health assessment or services to address his mental health crisis and suicidal thoughts and was put in four-point restraints for over twenty hours with intermittent movement. *Id.* ¶¶ 44–45. Plaintiff claims each defendant was aware that Plaintiff was suffering a mental health crisis and was, or should have been, aware that Plaintiff was suicidal. *Id.* ¶ 46.

3

Plaintiff remained in the crisis wing for two weeks before returning to the segregation dorm. *Id.* ¶48. Plaintiff alleges that for the rest of his stay at the Joliet Treatment Center, he did not get proper mental health services or care to address his mental health disabilities. *Id.* ¶49. Before the Court now is Defendant Hughes's motion to dismiss Counts V and VI, the alleged violations of the ADA and the RA. [94].

**II.  Standard**

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quoting *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014)); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A court deciding a Rule 12(b)(6) motion "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all well-pleaded facts as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Lax*, 20 F.4th at 1181. However, the court need not accept as true "statements of law or unsupported conclusory factual allegations." *Id.* (quoting *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586 (7th Cir. 2021)). "While detailed factual allegations are not necessary to survive a motion to dismiss, [the standard] does require 'more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action to

4

be considered adequate.'" *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019) (quoting *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016)).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Deciding the plausibility of the claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

**III. Analysis**

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C § 12132. Similarly, Section 504 of the RA prohibits a "qualified individual with a disability" from being "excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity," as a result of his disability. 29 U.S.C. § 794(a). Relief under the ADA and the RA is coextensive and the analysis under each statute is materially the same. *Jaros v. Ill. Dep't of Corrs*, 684 F.3d 667, 671–72 (7th Cir. 2012). For the RA to apply, the relevant state agency, the Illinois Department of Corrections here, must accept federal funds, which all states do. *Id.* at 671. Because the standards under the ADA and the RA are functionally identical, the Court considers both claims together, referring predominantly to the ADA.

To state a claim under Title II of the ADA, Plaintiff must allege that he: (1) is a qualified individual with a disability; (2) that he was denied benefit of services, programs, or activities of the public entity or otherwise subjected to discrimination by such an entity; and (3) the denial or discrimination was "by reason of" his disability. *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (quoting *Love v. Westville Corr. Ctr.*, 103 F.3d 558, 560 (7th Cir. 1996)). Defendant Hughes does not challenge the sufficiency of Plaintiff's allegations that he is a qualified individual with a disability within the meaning of the ADA and RA, ([94] at 3–4 (citing [78] ¶¶ 69, 77)) or that the Joliet Treatment Center is a "public entity" under the same ([78] ¶¶ 13–15). Thus, the crux of the dispute is whether Plaintiff plausibly alleged he was denied the benefits of any "services, programs, or activities" at the Joliet Treatment Center by reason of his disability.

### A. Services, Programs, or Activities

Hilliard alleges Defendant discriminated against him based on his disability in two ways: (1) by refusing to provide treatment for his mental illness despite knowledge of his illness, and (2) by failing to accommodate Plaintiff's disabilities. [78] ¶¶ 71, 79. Specifically, Hilliard contends that by failing to provide appropriate housing in an appropriate mental health unit, not providing appropriate mental health services and crisis services, placing him in isolated environment and an environment that provided him with the means to hurt himself, and placing him in restraints, Defendant discriminated against Plaintiff in ways that increased the severity of his illness. *Id.* Defendant argues these allegations, if taken as true, relate

6

to the sufficiency of Plaintiff's mental health care while in custody at the Joliet Treatment Center, but do not plausibly assert denied access to services, programs, or activities by reason of his disability even though they are styled as an ADA/RA claim. [94] at 4. Defendant concedes these allegations may give rise to a claim of deliberate indifference to an objectively serious medical condition under 42 U.S.C. §1983, but asserts they are not actionable under the ADA or RA. [94] at 4–5; [102] at 1–3.

Defendants rely on *Bryant v. Madigan*, 84 F.3d 246 (7th Cir. 1996). There, the Seventh Circuit held the ADA did not require the prison to provide special accommodation for a disabled prisoner's medical needs, in the absence of any allegation that the disabled prisoner was excluded from a prison activity, service, or program because of his disability. 84 F.3d at 249 (summarizing complaint as "incompetent treatment of [plaintiff's] paraplegia"); *see also Resel v. Fox*, 26 F. App'x 572, 577 (7th Cir. 2001) (holding that "a prison official does not violate the ADA when failing to attend to the medical needs of disabled prisoners."). The *Bryant* court concluded "The ADA [and RA do] not create a remedy for medical malpractice." 84 F.3d at 249. But numerous courts in the Seventh Circuit have distinguished that case. *See Edwards v. Dart*, No. 21 C 5665, 2022 WL 3543474, at *5 (N.D. Ill. Aug. 17, 2022) (collecting cases).

First, since *Bryant* was decided—which was before there was certainty the ADA even applied in prisons: it does—courts hold that medical services are among those "services, programs, or activities" that are covered by the ADA. *See United States v. Georgia*, 546 U.S. 151, 157 (2006) ("the alleged deliberate refusal of prison

7

officials to accommodate [plaintiff's] disability-related needs in such fundamentals as … medical care … constituted 'exclu[sion] from participation in or ... deni[al of] the benefits of' the prison's ;services, programs, or activities.'"). Second, courts in the Northern District routinely allow plaintiffs to proceed on an ADA claim when they were deprived of access to medical services that were available to other inmates. *See, e.g.*, *Paine ex re. Eilman v. Johnson*, No. 06 C 3173, 2010 WL 785397, at *8 (N.D. Ill. Feb. 26, 2010) ("This is not a case in which an ADA claim is brought as a disguised medical malpractice claim. Once an arrestee with a disability is in custody, the police have a duty to reasonably accommodate the arrestee's disability [and it was] undisputed that [the plaintiff] was not taken for any psychiatric evaluation or potential treatment prior to her release from custody."); *see also Earl v. Espejo*, No. 17 C 195, 2017 WL 3704826, at *2 (N.D. Ill. Aug. 28, 2017) ("at least some medical attention would have been a reasonable accommodation during [plaintiff's] detention").

*Bryant* is consistent with the weight of authority recognizing ADA and RA claims for claims of deprivation of medical services. Outright denials of medical care are actionable under the ADA, but provision of improper medical care, as in *Bryant*, is not. *McDaniel v. Syed*, 115 F.4th 805, 827 (7th Cir. 2024) ("simple disagreement with treatment is different from cases where, as here, a plaintiff offers evidence that the choice to reject his accommodation requests directly affected [access to services or programs]"); *see also Corbin v. Ind.*, No. 16-CV-602-PPS/MGG, 2018 WL 1920711, at *3 (N.D. Ind. Apr. 23, 2018) (claim that plaintiff "was denied basic psychological

8

care and services while he was housed in solitary confinement and that other inmates [without disabilities] were afforded such services" plausibly alleged violation of the ADA) (emphasis added); *Est. of Crandall v. Godinez*, No. 14-CV-1401, 2015 WL 1539017, at *7 (C.D. Ill. Mar. 31, 2015) (claim "that [plaintiff, a mentally ill inmate who committed suicide] was not properly treated for his mental illness—is distinctly different from a claim that [plaintiff] was denied access to medical services, and is not cognizable under the ADA.").

Here, Hilliard claims he was denied *any and all* mental health services after he initially reported being suicidal and was transferred to the crisis wing. [78] ¶ 28. Even after Plaintiff attempted suicide twice, *no* mental health treatment was provided. *Id.* ¶¶ 31–33, 44, 47–49. As pled, Hilliard's ADA and RA claims focus on the complete deprivation of mental health medical services, not the quality of the Joliet Treatment Center's medical services under a malpractice standard of care. Taking all allegations as true and drawing all reasonable inferences in favor of the Plaintiff, Hilliard's failure to accommodate claims are cognizable under the ADA and RA. While it may be the case that the evidence instead supports an Eighth Amendment claim based on inadequate medical treatment, at this stage, Hilliard's allegations suffice to state a claim under the ADA and RA.

### B. Causation

Finally, Defendant Hughes argues that Hilliard has not established the third element of his ADA claim: that he was denied benefits "by reason" of his disability. [102] at 3. This element imposes a "but-for causation test:" the plaintiff must show

9

"that, 'but for' his disability, he would have been able to access the services or benefits desired." *A.H. by Holzmueller v. Illinois High Sch. Ass'n*, 881 F.3d 587, 593 (7th Cir. 2018) (quoting *Wisconsin Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 752 (7th Cir. 2006)). Although *Holzmueller* "suggests that proof of disability discrimination requires intent," courts "have made clear that other methods of proving disability discrimination are available"—including, as relevant here, that the defendant refused to provide a reasonable accommodation. *Id.* at 592–93.

The complaint adequately pleads causation. Contrary to Defendant's arguments that Plaintiff was required to allege his "treating decisions were made for discriminatory reasons" ([102] at 3), it is "possible to demonstrate discrimination on the basis of disability by a defendant's refusal to make a reasonable accommodation." *Washington v. Indiana High Sch. Athletic Ass'n, Inc.*, 181 F.3d 840, 847 (7th Cir. 1999). In such instances, "the plaintiffs need not prove that the [defendant] intended to discriminate on the basis of disability," just that the defendant refused to make a reasonable accommodation. *Id.* As discussed above, Plaintiff Hilliard has plausibly alleged Defendant refused to make reasonable accommodations.

## IV. Conclusion

For the stated reasons, Defendant Latoya Hughes's Motion to Dismiss Counts V and VI of Plaintiff's Third Amended Complaint is denied.

E N T E R:

Dated: February 24, 2025

_____
MARY M. ROWLAND
United States District Judge

11